UNITED STATES DISTRICT COURT

FOR THE WESTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| ETHEL I. HURT, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Case No. CIV-23-518-AMG |
| ) | |
| MARTIN O'MALLEY, ) | |
| Commissioner of Social Security, ) | |
| ) | |
| Defendant. ) | |

## MEMORANDUM OPINION AND ORDER

Ethel I. Hurt ("Plaintiff") brings this action pursuant to 42 U.S.C. § 405(g) for judicial review of the final decision of the Commissioner of the Social Security Administration ("SSA") denying her application for disability insurance benefits ("DIB") under Title II of the Social Security Act, 42 U.S.C. §§ 401-34. (Doc. 1). The Commissioner has filed the Administrative Record ("AR") (Doc. 5), and the parties have fully briefed the issues (Docs. 11, 13, 14).[1] The parties have consented to proceed before the undersigned Magistrate Judge pursuant to 28 U.S.C. § 636(c)(1). (Docs. 8, 9). Based on the Court's review of the record and issues presented, the Court **REVERSES** the Commissioner's decision and **REMANDS** the matter for further proceedings.

---

[1] Citations to the parties' briefs refer to the Court's CM/ECF pagination. Citations to the Administrative Record refer to its original pagination.

1

I.     **Procedural History**

Plaintiff filed an application for DIB on October 28, 2019, alleging a disability onset date of January 2, 2016. (AR, at 182-86). The SSA denied the application initially and on reconsideration. (*Id.* at 108-11, 114-19). An administrative hearing was held on February 16, 2021. (*Id.* at 40-58). Afterwards, the Administrative Law Judge ("ALJ") issued a decision finding that Plaintiff was not disabled. (*Id.* at 18-38). The Appeals Council subsequently denied Plaintiff's request for review. (*Id.* at 8-14). Thus, the ALJ's decision became the final decision of the Commissioner. *Wall v. Astrue*, 561 F.3d 1048, 1051 (10th Cir. 2009); 20 C.F.R. § 404.981.

The case was appealed to this Court on December 28, 2021. (AR, at 1510). On March 3, 2022, on the motion of the SSA, the case was remanded for further proceedings. (*Id*. at 1516-17). The Appeals Council ordered the ALJ on remand to consider certain issues and obtain supplemental evidence from a vocational expert. (*Id*. at 1521-23). The remand hearing was held on March 7, 2023. (*Id*. at 1460-81). Afterwards, the ALJ issued a decision again finding that Plaintiff was not disabled. (*Id*. at 1435-59). Plaintiff now seeks judicial review. 42 U.S.C. § 405(g).

II.    **Administrative Decision**

At Step One, the ALJ found Plaintiff had not engaged in substantial gainful activity during the period from January 2, 2016, the alleged onset date, to her date last insured of December 31, 2020. (AR, at 1441). At Step Two, the ALJ found Plaintiff had the following severe impairments: lumbar spine degenerative disc disease, osteoarthritis of the bilateral hips, and osteoarthritis of the bilateral knees. (*Id.*) The ALJ also found that

2

Plaintiff had the following non-severe medically determinable impairments:

> morbid obesity, left main coronary artery disease status post coronary artery bypass grafting time four (in October 2009), essential hypertension, aortoiliac atherosclerosis, hyperlipidemia, type II diabetes mellitus, status post ketoacidosis, status post gastroparesis, GERD, hypothyroidism, carpal tunnel syndrome status post left carpal tunnel repair and neurolysis of the median nerve (in June 2012), rotator cuff disorder, dopped urethra, status post tubal ligation, chronic allergic rhinitis, hiatal hernia, urinary tract infections, uterine fibroid, upper respiratory infections, insomnia, and mixed anxiety and depressive disorder.

(*Id*. at 1442).

At Step Three, the ALJ found Plaintiff had no impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments. (*Id*. at 1444).  The ALJ then determined Plaintiff had the RFC "to perform 'light' work as defined in 20 CFR 404.1567(b) with frequent climbing, balancing, stooping, kneeling, crouching, and crawling." (*Id.*)  Then, at Step Four, the ALJ found Plaintiff could perform her past relevant work as a receptionist bookkeeper. (*Id.* at 1450).  Thus, the ALJ found that Plaintiff had not been under a disability from January 2, 2016, the alleged onset date, through December 31, 2020, the date last insured.  (*Id.* at 1451).

## III. Claims Presented for Judicial Review

Plaintiff raises two issues on appeal.  First, Plaintiff contends "[t]he ALJ erred in omitting mental limitations from the RFC, inconsistent with [his] finding that Plaintiff has deficits of her abilities to understand, remember, or apply information and concentrate, persist, or maintain pace, particularly given the high skill level of her past jobs." (Doc. 11, at 4).  Plaintiff further argues that the ALJ erred by discussing her mental impairments in the Step Two paragraph B findings only and did not make the required analysis of those

impairments in his RFC discussion. (*Id*. at 10-12; Doc. 14, at 3-8). Second, Plaintiff argues that "[t]he ALJ's RFC finding does not otherwise reasonably describe the full effects of [Plaintiff's] impairments and limitations as demonstrated in the record." (Doc. 11, at 12-24). In response, the Commissioner asserts that "[t]he ALJ reasonably determined at Step Four that Plaintiff's physical and mental impairments, when considered in combination, did not preclude a range of light work with no mental limitations." (Doc. 13, at 4).

**IV.  The Disability Standard and Standard of Review**

The Social Security Act defines "disability" as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). A physical or mental impairment is an impairment "that results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." *Id.* § 423(d)(3). A medically determinable impairment must be established by "objective medical evidence" from an "acceptable medical source," such as a licensed physician or a licensed and certified psychologist; whereas the claimant's own "statement of symptoms, a diagnosis, or a medical opinion" is not sufficient to establish the existence of an impairment. 20 C.F.R. § 404.1521; *see id.* §§ 404.1502(a), 404.1513(a). A plaintiff is disabled under the Social Security Act "only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age,

education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy." 42 U.S.C. § 423(d)(2)(A).

Social Security regulations implement a five-step sequential process to evaluate a disability claim. 20 C.F.R. § 404.1520; *Williams v. Bowen*, 844 F.2d 748, 750-51 (10th Cir. 1988) (explaining five steps and burden-shifting process). To determine whether a claimant is disabled, the Commissioner inquires: (1) whether the claimant is engaged in any substantial gainful activity; (2) whether the claimant suffers from a severe impairment or combination of impairments; (3) whether the impairment meets an impairment listed in Appendix 1 of the relevant regulation; (4) considering the Commissioner's assessment of the claimant's residual functional capacity ("RFC,")[2] whether the impairment prevents the claimant from continuing claimant's past relevant work; and (5) considering assessment of the RFC and other factors, whether the claimant can perform other types of work existing in significant numbers in the national economy. 20 C.F.R. § 404.1520(a)(4)(i)-(v). Plaintiff bears the "burden of establishing a prima facie case of disability under steps one, two, and four" of the SSA's five-step procedure. *Fischer-Ross v. Barnhart*, 431 F.3d 729, 731 (10th Cir. 2005). If the plaintiff makes this prima facie showing, "the burden shifts to the Commissioner to show the claimant has the [RFC] to perform other work in the national economy in view of [claimant's] age, education, and work experience." *Id*. "The claimant is entitled to disability benefits only if [he or she] is not able to perform other work." *Bowen v. Yuckert*, 482 U.S. 137, 142 (1987).

---

[2] RFC is "the most [a claimant] can still do despite [a claimant's] limitations." 20 C.F.R. § 404.1545(a).

This Court's review of the Commissioner's final decision is limited "to determin[ing] whether the Commissioner applied the correct legal standards and whether the agency's factual findings are supported by substantial evidence." *Noreja v. Comm'r, SSA*, 952 F.3d. 1172, 1177 (10th Cir. 2020) (citation omitted). "Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Staheli v. Comm'r, SSA*, 84 F.4th 901, 905 (10th Cir. 2023) (quoting *Wilson v. Astrue*, 602 F.3d 1136, 1140 (10th Cir. 2010); *see also Lax v. Astrue*, 489 F.3d 1080, 1084 (10th Cir. 2007) (defining substantial evidence as "more than a scintilla, but less than a preponderance"). A court's review is based on the administrative record, and a court must "meticulously examine the record as a whole, including anything that may undercut or detract from the ALJ's findings in order to determine if the substantiality test has been met." *Grogan v. Barnhart*, 399 F.3d 1257, 1261 (10th Cir. 2005). While the court considers whether the ALJ followed the applicable rules of law in weighing particular types of evidence in disability cases, the court will "neither reweigh the evidence nor substitute [its] judgment for that of the agency." *Vigil v. Colvin*, 805 F.3d 1199, 1201 (10th Cir. 2015) (internal quotation marks omitted). Even if a court might have reached a different conclusion, the Commissioner's decision stands if it is supported by substantial evidence. *See White v. Barnhart*, 287 F.3d 903, 908 (10th Cir. 2002). But "an agency decision that either applies an incorrect legal standard or is unsupported by substantial evidence is subject to reversal." *Staheli*, 84 F.4th at 905.

**V.     The ALJ Failed To Adequately Consider Plaintiff's Non-Severe Mental Impairments in Formulating the RFC.**

In addition to the impairments that the ALJ found severe, *see supra*, the ALJ also found that Plaintiff had the medically determinable mental impairments of insomnia and mixed anxiety and depressive disorder.  (AR, at 1442).  The ALJ considered the four broad areas of mental functioning set out in the disability regulations for evaluating mental disorders, the "paragraph B criteria." (*Id*. at 1443).  He determined that Plaintiff has mild limitations in understanding, remembering or applying information; interacting with others; concentrating, persisting or maintaining pace; and in adapting or managing oneself.  (*Id*.)   The ALJ found that "[b]ecause [Plaintiff's] medically determinable mental impairments caused no more than 'mild' limitation in any of the functional areas and the evidence does not otherwise indicate that there is more than a minimal limitation in the claimant's ability to do basic work activities, they were nonsevere." (*Id.*)  In making these Step Two findings, the ALJ considered the opinions of the state agency psychologists and a phone discussion with Plaintiff.  (*Id*. at 1442).

Plaintiff argues that the ALJ failed to properly consider these non-severe mental impairments in formulating the RFC.  The Court agrees.  In assessing a claimant's RFC, the ALJ must consider the combined effect of all of the claimant's medically determinable impairments, whether severe or not severe.  20 C.F.R. § 404.1545(a)(2); Social Security Ruling 96-8p, 1996 WL 374184, at *4 (July 2, 1996).  Additionally, the ALJ must "include a narrative discussion describing how the evidence supports each conclusion" as to the claimant's work-related limitations.  *Id*. at *7.  The ALJ must explain the basis for the

7

limitations included in the RFC assessment with citations to "specific medical facts (e.g., laboratory findings) and nonmedical evidence (e.g., daily activities, observations)." *Id*.

The SSA has specifically stated that the paragraph B criteria used at Step Two of the analysis to rate the severity of mental impairments are "not an RFC assessment," and that

> [t]he mental RFC assessment used at steps 4 and 5 of the sequential evaluation process requires a more detailed assessment by itemizing various functions contained in the broad categories found in paragraphs B and C of the adult mental disorders listings in 12.00 of the Listing of Impairments, and summarized on the [Psychiatric Review Technique Form].

*Id*. at *4. While the ALJ's opinion explicitly acknowledged this legal standard, (AR, at 1443), his only further statement about Plaintiff's mental impairments was at the end of the Step Two analysis, that "[t]he following [RFC] assessment reflects the degree of limitation I have found in the 'paragraph B' mental function analysis." (*Id*.)

The RFC contained no mental limitations, (*see id*. at 1444), and the ALJ's justification for the RFC made only one reference to Plaintiff's mental state or mental functioning, in his analysis of the medical opinion of Plaintiff's pain management specialist. The ALJ stated:

> On October 17, 2020, the [Plaintiff's] own medical source, pain management physician Dr. Liem Q. Trang, D.O., completed a series of medical source statements, in which he opined that the [Plaintiff's] pain was present to such an extent as to cause a limitation or restriction having more than a minimal effect on the ability to do basic work activities or activities of daily living. Her pain with basic physical work would increase to such an extent that rest or medication was necessary. **Pain experienced would cause reduction in basic mental work activities to such a degree as to cause inadequate functioning in such task or total abandonment of tasks.** Some limitations may be present, but not to such a degree as to create a serious problem in most instances due to her prescribed medications. **Dr. Trang also opined**

8

> **the [Plaintiff] could not maintain concentration and attention for extended periods in a routine work setting and she could not be expected to attend any employment on a sustained basis.** He also opined the [Plaintiff] could not physically do sedentary work at a reasonable pace due to lumbar facet, degenerative joint disease, aortic atherosclerosis, and bilateral hip osteoarthritis. I find Dr. Trang's opinions unpersuasive.

(*Id*. at 1448) (record citations omitted) (emphasis added). Significantly, it appears that Dr. Trang's analysis of Plaintiff's mental functioning was a product of his observations about her pain level, and not any observations about the effects of her medically determinable non-severe mental impairments of insomnia and mixed anxiety and depressive disorder. Thus, the ALJ's discussion of Dr. Trang's opinions does not satisfy the obligation to consider the non-severe impairments throughout the RFC assessment, 20 C.F.R. § 404.1545(a)(2),[3] nor to make "a more detailed assessment by itemizing various functions

---

[3] Although not argued by Plaintiff, the Court notes that the ALJ also failed to discuss any of the non-severe impairments in the RFC determination, providing only a conclusory statement that

> [p]ursuant to SSR 96-8p, I have considered limitations and restrictions imposed by all of the [Plaintiff's] impairments, even those that are not "severe." I find the residual functional capacity accounts for functional limitations which could reasonably have been expected to arise from her nonsevere impairments of morbid obesity, left main coronary artery disease status post coronary artery bypass grafting time four (in October 2009), essential hypertension, aortoiliac atherosclerosis, hyperlipidemia, type II diabetes mellitus, status post ketoacidosis, status post gastroparesis, GERD, hypothyroidism, carpal tunnel syndrome status post left carpal tunnel repair and neurolysis of the median nerve (in June 2012), rotator cuff disorder, dopped urethra, status post tubal ligation, chronic allergic rhinitis, hiatal hernia, urinary tract infections, uterine fibroid, upper respiratory infections, insomnia, and mixed anxiety and depressive disorder, considered singly and in combination, and that none of her nonsevere impairments in-and-of-themselves necessitated additional functional limitation(s).

(AR, at 1449).

contained in the broad categories found in paragraph[] B," Social Security Ruling 96-8p, 1996 WL 374184, at *4.

In determining the RFC, the ALJ made no mention of Plaintiff's mild limitations in understanding, remembering or applying information; interacting with others; concentrating, persisting or maintaining pace; and in adapting or managing oneself. A mild limitation is not the same as no limitation. *See* 20 C.F.R. Part 404 Subpt. P, App'x 1 § 12.00F(2)(a)-(b) (defining "no limitation" as "[y]ou are able to function in this area independently, appropriately, effectively, and on a sustained basis," and "mild limitation" as "[y]our functioning in this area independently, appropriately, effectively, and on a sustained basis is slightly limited"). And if the ALJ decided to omit any mental limitations from the RFC despite Plaintiff's mild limitations in these four areas, he should have explained why. He did not do so.

The Commissioner argues that the following statements by the ALJ satisfy the SSA's regulations and rulings: the ALJ's acknowledgement that in formulating the RFC he "must consider all of the claimant's impairments, including impairments that are not severe," (AR, at 1440-41); "I have considered the entire medical record even when not explicitly discussed," (*id*. at 1445); and "I have considered all symptoms and the extent to which these symptoms can reasonably be accepted as consistent with the objective medical evidence and other evidence," (*id*.). (Doc. 13, at 5-6). However, in *Wells v. Colvin*, 727 F.3d 1061 (10th Cir. 2013), the Tenth Circuit Court of Appeals explicitly condemned this type of short-cut analysis, stating:

> [A] conclusion that the claimant's mental impairments are non-severe at step

10

> two does not permit the ALJ simply to disregard those impairments when assessing a claimant's RFC and making conclusions at steps four and five. In his RFC assessment, the ALJ must consider the combined effect of *all* medically determinable impairments, whether severe or not. Here, after stating his conclusion that [the plaintiff's] mental impairments were non-severe, the ALJ stated that "[t]hese findings do not result in further limitations in work-related functions in the [RFC] assessment below." He then reiterated his conclusion that the mental impairments were non-severe. The language used suggests that the ALJ may have relied on his step-two findings to conclude that [the plaintiff] had no limitation based on her mental impairments. If so, this was inadequate under the regulations and the Commissioner's procedures.

*Id*. at 1068-69 (internal citations omitted).  Simply stated, "the Commissioner's procedures do not permit the ALJ to simply rely on his finding of non-severity as a substitute for a proper RFC analysis."  *Id*. at 1065.  Rather, "the ALJ's RFC assessment must include a narrative discussion describing how the evidence supports each conclusion, citing specific medical facts . . . and nonmedical evidence."  *Id*.

The ALJ in this matter did precisely what the Tenth Circuit condemned in *Wells* – he relied on his Step Two finding that Plaintiff's medically determinable mental impairments of insomnia and mixed anxiety and depressive disorder were non-severe as a substitute for a more specific RFC analysis.  Reversal of the Commissioner's decision and remand for further administrative proceedings is warranted for a reconsideration of the effect of Plaintiff's mental impairments in formulating the RFC and the subsequent analytical steps.  *See, e.g., Wycoff v. Kijakazi*, 2023 WL 6292806, at *4 (E.D. Okla. Sept. 27, 2023) ("Absent a discussion of how Claimant's non-severe [mental] impairments were accounted for in the RFC assessment, or an explanation why such impairments did not impose any functional limitations, the Court is unable to 'credit [the ALJ's] conclusion with substantial evidence.'") (quoting *Wells*, 727 F.3d at 1071); *Janet K. C. v. Kijakazi*,

2023 WL 3582540, at *4 (N.D. Okla. May 22, 2023) (same); *Beer v. Kijakazi*, No. CIV-20-351-AMG, 2021 WL 3824837, at *1 (W.D. Okla. Aug. 26, 2021).

Because this error alone requires remand, the Court need not address the other arguments raised by Plaintiff. *Watkins v. Barnhart*, 350 F.3d 1297, 1299 (10th Cir. 2003) ("We will not reach the remaining issues raised by appellant because they may be affected by the ALJ's treatment of this case on remand.").

## VI.   Conclusion

Having reviewed the medical evidence of record, the transcript of the administrative hearing, the decision of the ALJ, and the pleadings and briefs of the parties, the undersigned **REVERSES** the decision of the Commissioner and **REMANDS** the matter for further proceedings.

**SO ORDERED** this 29th day of April, 2024.

AMANDA MAXFIELD GREEN
UNITED STATES MAGISTRATE JUDGE